F. B. DENBURGER & SONS, Appellee, v. ESTELLA OSWANDEL FISHER et al., Appellants.

No. 45505.

FEBRUARY 18, 1941.

Harold J. Fleck, for appellee.

Edward A. Schmidt, L. R. Carson, and McCoy & McCoy, for appellants.

SAGER, J.—Charles T. Oswandel died intestate July 30, 1929, owning the real estate involved herein, and leaving surviving his widow, Estella Oswandel Fisher; his son, Dwight; and a daughter, Florence. Following his death the widow and children continued to live on the land which comprised 102 acres of the value at the time of the trial of $90 to $100 per acre.

During the years 1933 to 1935, appellee sold lumber and other materials to the widow. The son helped to haul a part of it and both he and his sister knew that it was actually furnished. The widow failing to pay, a judgment was taken against her. On this there was due at the time of the trial approximately $387.67. Execution was issued and returned, in effect, "no property found." No claim is made that the debt was not a just one or that any part of it had been paid.

On December 31, 1935, the widow deeded to her children the land involved and transferred to them all the personal property she had and filed a petition in bankruptcy and was discharged. Before this case went to trial appellant Estella was dismissed as a party. The son and daughter filed an answer by which they denied generally, asserted a full consideration for the deed, and that the transfer was of a homestead right, that their grantor had been adjudged a bankrupt after having listed appellee's judgment as a provable claim. They alleged further that appellee was guilty of laches in that its claim accrued on December 31, 1935, at a time when Estella was able to pay and this suit was not started until September 8, 1939, when she was no longer able to pay.

As stated above, the claim of the appellee is admittedly just and the answering appellants knew that the material for which the judgment was taken had actually been delivered but they seek now to defeat the claim while enjoying the improvements into which the material went.

The trial court found the deed to have been fraudulent and set it aside. A reading of the record leaves no doubt of the cor-

rectness of that decision. Estella not only transferred her interest in the real estate but also all the personal property which she owned, leaving nothing with which she could pay this or any other debt. Meanwhile she secretly retained what amounted to a life estate in the land involved in this controversy. She transferred to her children a judgment in her behalf upon which was collected $2,500. The extent of her other personal property is not certain, but her report in the estate of her husband was that as administratrix she collected $4,453.78. This she sought to offset by debts in the amount of $5,327.20. These debts, she testified, "include a new car, a new team, a new wagon, paid tuition for Dwight [one of the defendants] at school, paid taxes on farm, paid operation expenses of the farm, made building repairs, and a fur coat, wiring of house, and a frigidaire. Most of these items were incurred after Mr. Oswandel's death. I showed no income from the farm in the report. Dwight's father had promised Dwight [16 years old when his father died] a new car for being a good boy and I tried to fulfill his promise."

The claim of the appellants that a full consideration was paid cannot be sustained. The trial court concluded that the consideration was grossly inadequate, that there was a clear intention to defraud creditors, and that Estella's children had actual and constructive notice of such intent. These conclusions are abundantly supported by the record. Appellants cite authorities to these propositions: (1) That a conveyance of a homestead is not a fraud on creditors; (2) that a homestead comes into existence by operation of law; and (3) that a homestead may consist of an undivided interest in lands held in common. All of these propositions may be conceded and the result remains the same, because there is nothing before us to justify the claim that Estella Oswandel ever asserted a homestead right in the premises involved. These findings of the trial court are amply supported by the record:

"* * * Estella Oswandel was appointed as administratrix of the estate of Charles T. Oswandel, deceased and acted as such administratrix until the estate was closed in 1936; that the real estate described in plaintiff's petition was listed in said estate of Charles T. Oswandel and she at all times claimed a one-third

interest therein as surviving spouse; that no homestead was ever platted and recorded; * * *''

The court further found that Estella and her children continued to live on the premises and were doing so at the time of the trial. After finding that Estella had a ''secret agreement to hold a life estate,'' the decree of the trial court continues:

''* * * the children Dwight Oswandel and Florence Oswandel Bonnett knew of the plaintiff's bill for materials and services rendered in 1933-35 and that the conveyance of the above referred to real estate and all of her personal property stripped the mother of all the property that she had; that it was the intention of Estella Oswandel to get rid of all the property that she had in her name at the time of the conveyance of the real estate; that the value of the farm at the time conveyed was $10,200.00; that the said Estella Oswandel was the owner of an undivided one-third interest in and to the real estate described in plaintiff's original petition from and after the death of Charles T. Oswandel in July, 1929, and was still the owner thereof as of December 31st, 1935 when she conveyed to her son and daughter.''

Other questions were presented below but are not argued here and we do not consider them.

Being satisfied that the decree of the trial court is sustained by the record, it is affirmed.—Affirmed.

HALE, C. J., and BLISS, MITCHELL, STIGER, MILLER, and OLIVER, JJ., concur.